**UNITED STATES of America,**

v.

**Cornelius A. BARBER, Defendant.**

**No. P2022553, P2022554, P2022555.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 9, 2005.

**MEMORANDUM OPINION**

PORETZ, United States Magistrate Judge.

I. *Procedural History*

On July 18, 2004, Pentagon Police Officer Prochaska arrested Cornelius A. Barber for driving under the influence (DUI), driving while intoxicated (DWI), and reckless driving for certain events arising on the Pentagon Reservation. 32 C.F.R. §§ 234.17(c)(1)(i)-(ii) & 234.17(a) (adopting Virginia Code Section 46.2–864). On November 19, 2004, Defendant appeared before this Court with counsel for his trial.

Through a plea agreement accepted by the Court, the Government moved to dismiss the DUI and reckless driving charges, and Defendant pled guilty to DWI. The Court took this matter under advisement to consider Defendant's argument concerning whether an enhanced penalty provided in Virginia Code Section 18.2–270(A) should be applied to Defendant's sentence.

## II. *Factual Summary*

After Defendant's guilty plea, the Government proffered a stipulation of facts to the Court to form the basis for Defendant's DWI violation. As read into the record, on July 18, 2004 at the Pentagon Reservation, Officer Prochaska observed a Toyota Camry idling at rest on top of a dirt embankment in a construction area that was surrounded by florescent orange cones. Defendant, unable to maintain his balance, was standing next to the vehicle, in a state of stupor, with his eyes' glossy and blood shot. Defendant, smelling of alcohol, indicated to Officer Prochaska that he had driven from Columbia Pike, but could not recollect how he arrived on the embankment. Defendant stated that he had drank two gin and orange juices, but had not consumed any alcohol once the vehicle had stopped. After failing a standard field sobriety test, Officer Prochaska arrested Defendant and transferred him to the Court Liaison Office where he was administered two Intoxilyzer 5000 breath tests. Defendant's breath test results revealed that his blood alcohol levels were .216 at 2:52 a.m. and .212 at 2:58 a.m.

After the stipulation of facts, the Court found Defendant guilty of DWI. Thereafter, the Government alerted the Court to Defendant's medical status as a diabetic, which, according to the Government, may result in the production of acetone levels that could have increased Defendant's breath test readings. After the Defen-

dant's guilty plea and at the Government's initiative, the Government and Defendant subsequently moved to amend the stipulation of facts to provide that Defendant's breath alcohol concentration was at least 0.15, but not greater than 0.20 based on his Intoxilyzer 5000 breath tests.

During the sentencing phase, Defendant argued that Virginia Code Section 18.2–270's mandatory incarceration periods for DWI Defendants with breath alcohol readings in excess of 0.15 (the "enhanced penalties") may not be imposed where proof of the Defendant's blood alcohol level is based on the Intoxilyzer 5000 (or like) breath test.

The Court took this matter under advisement pending briefing by the parties on the sole question of whether the enhanced penalties in Virginia Code Section 18.2–270(A) only apply when an individual submits to a blood test and deferred entering a finding on Defendant's exact blood alcohol level. The Government requests that this Court find that Defendant's "blood alcohol level" was at least 0.15, but not greater than 0.20, while Defendant requests that this Court find that Defendant's "breath alcohol level" was at least 0.15, but not greater than 0.20.

## III. *Discussion*

The Court must answer the following question: Do the enhanced penalties in Virginia Code Section 18.2–270(A) only apply when a defendant submits to a blood test? Holding: No. Proof of a person's blood alcohol level under Section 18.2–270(A) may consist of either a chemical blood test or a chemical breath test as authorized in Title 18.2, Chapter 7, Article 2 of the Virginia Code.

### A. *Comity*

Traffic offenses arise before this Court when an individual violates a controlling

Code of Federal Regulation (CFR), or in the absence of other federal law, commits a Virginia offense as assimilated pursuant to 18 U.S.C. Section 13. DWI offenders convicted under the CFR commit a Class B misdemeanor, punishable by up to six months of incarceration, a $5,000 fine, and a $10 special assessment. 18 U.S.C. §§ 3013, 3571, & 3581; *See also* 32 C.F.R. § 234.19(a). DWI offenders convicted under the assimilated statute, 18 U.S.C. Section 13, "shall be guilty of a like offense and subject to a like punishment" of the State where the offense was committed. 18 U.S.C. § 13. The crime of DWI under Virginia law is a Class 1 misdemeanor with a mandatory minimum fine of $250, and is punishable by up to twelve months of incarceration and a $2,500 fine. Va.Code Ann. § 18.2–270(A) & § 18.2–11. Virginia further imposes certain mandatory minimum periods of incarceration where an individual's blood alcohol level is 0.15 or greater. Va.Code Ann. § 18.2–270(A). Unlike Virginia's law, the Code of Federal Regulations does not set forth any enhanced penalties for such a blood alcohol level.

█ Although the Court has the discretion to apply any sentence authorized by law, as a matter of comity, this Court has chosen, in cases alleging violations of the CFR, to impose the enhanced penalties set forth in Virginia Code Section 18.2–270(A) where an individual's blood alcohol level is 0.15 or greater. Whether committed in violation of the CFR or 18 U.S.C. Section 13 as assimilated, this Court imposes the enhanced penalties in Section 18 .2–270(A) because these DWI offenses occur in Virginia, and the Commonwealth has evinced a strong public policy to punish grave DWI offenses severely. For this reason, and this Court's desire to avoid inequitably disparate sentences for similarly-situated offenders in Virginia, this Court will apply the enhanced penalties in Virginia Code Section 18.2–270(A) where an individual's blood alcohol level is 0.15 or greater.

B. *Virginia's Mandatory Minimum Period of Incarceration for DWIs*

Virginia Code Section 18.2–266 criminalizes drunk driving as driving while intoxicated or driving under the influence:

It shall be unlawful for any person to drive or operate any motor vehicle, engine or train (i) while such person has a blood alcohol concentration of 0.08 percent or more by weight or by volume or 0.08 grams or more per 210 liters of breath as indicated by a chemical test administered as provided in this article ["DWI"], (ii) while such person is under the influence of alcohol ["DUT"].

Va.Code Ann. § 18.2–266. Effective July 1, 2004, Virginia Code Section 18.2–270(A) proscribes mandatory minimum incarceration periods for defendants whose chemical tests reveal a blood alcohol level of 0.15 or greater:

Except as otherwise provided herein, any person violating any provision of § 18.2–266 shall be guilty of a Class 1 misdemeanor with a mandatory minimum fine of $250. If the person's *blood alcohol level as indicated by the chemical test administered as provided in this article was at least 0.15,* but not more than 0.20, he shall be confined in jail for an additional mandatory minimum period of five days or, if the level was more than 0.20, for an additional mandatory minimum period of 10 days.

Va.Code Ann. § 18.2–270(A) (emphasis added). Logically, to apply this sentencing statute, a court must find that "the chemical test administered as provided in this article was at least 0.15." *Id.* Here, the Court has deferred the parties' proposed stipulation that Defendant's blood/

breath alcohol level was at least 0.15, but not greater than 0.20.

### C. *Statutory Construction of Virginia Code Section 18.2–270(A)*

Defendant argues that Section 18.2–270(A) does not apply where an individual's *breath test reading* is 0.15 or greater because this section only applies when an individual submits to a *blood test* that reveals a blood alcohol level of 0.15 or greater.

■ When faced with issues of statutory construction, Virginia courts have consistently applied a teleological approach by considering the purpose of the statute:

> A statute must be construed with reference to its subject matter, the object sought to be attained, and the legislative purpose in enacting it; the provisions should receive a construction that will render it harmonious with that purpose rather than one which will defeat it.

*Esteban v. Commonwealth,* 266 Va. 605, 587 S.E.2d 523, 526 (2003) (citing *Stanley v. Tomlin,* 143 Va. 187, 129 S.E. 379, 382 (1925)). Consequently, this Court construes Section 18.2–270 in accordance with its overall purpose in the legislative scheme.

This legislative scheme is found in Title 18.2, Chapter 7, Article 2 of the Virginia Code, entitled "Driving Motor Vehicle, etc., While Intoxicated," and it establishes, *inter alia,* the crimes, presumptions, evidentiary procedures, admissibility requirements, and sentencing standards for the unlawful act of driving a motor vehicle while being physically impaired by alcohol or drugs. Va.Code Ann. §§ 18.2–266 to 18.2–273.

### 1. *Terminology Differences between Sections 18.2–266 and 18.2–270(A)*

There are certain terminology differences between Sections 18.2–266 and 18.2–270(A) which are ultimately at issue before this Court. Under Section 18.2–266 (the "Criminal Statute"), no person may drive when he "has a *blood alcohol concentration* of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath as indicated by *a* chemical test administered as provided in this article [Title 18.2, Ch. 7, Art. 2]." Va.Code Ann. § 18.2–266 (emphasis added). If the DWI offender's *"blood alcohol level"* was at least 0.15, but not greater than 0.20 "as indicated by *the* chemical test administered as provided in this article," this offender must receive a mandatory minimum period of incarceration of five days. Va. Code Ann. § 18.2–270(A) (emphasis added). Naturally, to be given effect, an offender must first be found guilty under the Criminal Statute before Section 18.2–270 (the "Sentencing Statute") may be applied. Unfortunately, these companion sections do not incorporate the exact same terminology when discussing the same concepts.

First, the Criminal Statute refers to the exact, blood alcohol percentage, breath alcohol ratio, and relative units of measurement (the "alcohol measurement terminology") necessary to support a conviction: "0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath." Va.Code Ann. § 18.2–266. The Sentencing Statute was not drafted with the same alcohol measurement terminology, but instead provides merely that "the person's blood alcohol level" must be at least 0.15. Va.Code Ann. § 18.2–270(A). Second, the Criminal Statute refers to "blood alcohol concentration" whereas the Sentencing Statute reads "blood alcohol level." *Compare* Va.Code Ann. § 18.2–266, *with* § 18.2–270(A). Third, the Criminal Statute refers to Article 2's element of proof as "*a* chemical test as provided in this article" whereas the Sentencing Stat-

ute refers to "*the* chemical test as provided in this article." *Id.* (emphasis added).

### 2. Distinctions without Difference

The Court finds that these distinctions do not materially alter Sections 18.2–266 and 18.2–270. First, these statutes must be read together because the Sentencing Statute specifically incorporates the Criminal Statute by reference:

> Any person violating *any provision of § 18.2–266* shall be guilty of a Class 1 misdemeanor with a mandatory minimum fine of $250. If the person's blood alcohol level ... was at least 0.15, but not more than 0.20, he shall be confined in jail for an additional mandatory minimum period of five days.

Va.Code Ann. § 18.2–270(A) (emphasis added). The Criminal Statute restrictively delineates the exact, alcohol measurement standards of "0.08 percent or more by weight or by volume or 0.08 grams or more per 210 liters of breath" which are necessary to "support a conviction." Va. Code Ann. § 18.2–266. Because the Sentencing Statute already incorporates the alcohol measurement standards and terminology provided in the Criminal Statute, the Sentencing Statute merely adds that if the blood alcohol level is 0.15 or greater, then an enhanced penalty applies. Consequently, to apply the enhanced penalties, there is no need for the Sentencing Statute to provide specifically the exact blood alcohol percentage, breath alcohol ratio, or relative units of measurement.

Second, the Criminal Statute's reference to "blood alcohol concentration" and the Sentencing Statute's reference to "blood alcohol level" is also immaterial. *Compare* Va.Code Ann. § 18.2–266, *with* § 18.2–270(A). Reading these companion statutes together, there is no meaningful distinction between "concentration" and "level." *See* Va.Code Ann. § 18.2–270(A) (incorporating Section 18.2–266 by reference). Additionally, at least one appellate court has held that phrases "blood alcohol concentration" and "blood alcohol level" have the same meaning:

> Although the [Texas] statute uses the terms blood-alcohol "concentration," we hold that the term blood alcohol "level" means the same thing. Texas courts have used the terms "concentration" and "level" in DWI cases interchangeably.

*Sanchez v. State*, No. 01–96–00227–CR, 1997 WL 369290, *1, 2 (Tex.Crim.App. July 3, 1997) (not designated for publication). This Court similarly holds that the terms "blood alcohol concentration" and "blood alcohol level" have the same meaning within the context of Title 18.2, Chapter 7, Article 2 of the Virginia Code.

Third, Defendant's position that "breath alcohol level" is distinguishable from "blood alcohol level" also lacks merit. This Court did not locate any use, reference, or description of "breath alcohol level" in either the Virginia Code or any Virginia case law. Yet, throughout Article 2, the General Assembly has variously referred to "blood alcohol" when referring to the results of a breath test. For instance,

- A DWI suspect has a right to have his breath analyzed "to determine the probable alcoholic content of his blood." Va. Code Ann. § 18.2–267(A) (Section entitled, "Preliminary analysis of breath to determine alcoholic content of blood.").

- DWI suspects may be arrested "[w]henever the breath sample analysis indicates that alcohol is present in the person's blood." Va.Code Ann. § 18.2–267(D).

- A driver on Virginia's roads impliedly consents to a post-arrest breath test to determine the "alcohol ... content of his blood." Va.Code Ann. § 18.2–268.2(A) (Section entitled, "Implied consent to

post-arrest chemical test to determine drug or alcohol content of blood.").

● If arrested and tested, the suspect has a right to observe and to see "the blood-alcohol reading on the equipment used to perform the breath test." Va.Code Ann. § 18.2–268.2(B)

● It is unlawful in Virginia for a person arrested for DWI to refuse to take a breath test to determine the "alcohol . . . content of his blood." Va.Code Ann. § 18.2–268.3(A).

● Individuals administering breath tests must advise the accused of "his right to observe the process and see the blood alcohol reading on the equipment used to perform the breath test." Va.Code Ann. § 18.2–268.9.

● The failure of an accused to submit to a breath test "to determine the alcohol . . . content of his blood is not evidence." Va.Code Ann. § 18.2–268.10.

● Virginia recognizes certain rebuttable presumptions where "the amount of alcohol in the blood of the accused . . . as indicated by a chemical analysis of a sample of the accused's blood or breath to determine the alcohol content of his blood" is at a certain level. Va.Code Ann. § 18.2–269(A) (Section entitled, "Presumptions from alcohol content of blood.").

Additionally, the phrase "blood alcohol level" has been used interchangeably in Virginia's courts to refer to the results of both breath tests and blood tests. *Compare Webb v. Rivers,* 256 Va. 460, 507 S.E.2d 360, 361 (1998) ("a breath test indicated that the defendant had a blood alcohol level of .21%"), *with Basfield v. Commonwealth,* 11 Va.App. 122, 398 S.E.2d 80, 81 (1990) (using the phrase "blood alcohol level" to refer to the result of defendant's blood test); *See also Dugger v. Commonwealth,* 40 Va.App. 586, 580 S.E.2d 477, 479 (2003); *Chase v. Commonwealth,* 37

Va.App. 194, 555 S.E.2d 422, 423 (2001); *Dalo v. Commonwealth,* 37 Va.App. 156, 554 S.E.2d 705, 707 (.2001); *Hall v. Commonwealth,* 32 Va.App. 616, 529 S.E.2d 829, 837 (2000); *Rasmussen v. Commonwealth,* 31 Va.App. 233, 522 S.E.2d 401, 403 (1999); *U.S. v. Tresvant,* 677 F.2d 1018, 1019 (4th Cir.1982). Based on the Virginia Code and Virginia case law, it is apparent to this Court that a chemical breath test tests a person's "blood alcohol level."

Finally, the difference between "a chemical test" and "the chemical test" as provided in Article 2 lacks materiality. Article 2's legislative design contemplates that there are two valid chemical tests in Virginia that determine a person's blood alcohol level: a breath test and a blood test. For instance, by statute every driver in Virginia impliedly consents to submit to a breath test or a blood test:

Any person . . . who operates a motor vehicle upon a highway . . . shall be deemed thereby, as a condition of such operation, to have consented to have samples of his blood, breath, or both blood and breath taken for a chemical test to determine the alcohol, drug, or both alcohol and drug content of his blood.

Va.Code Ann. § 18.2–268.2(A). If a person is arrested for DWI, the person must first submit to a breath test. Va.Code Ann. § 18.2–268.2(B). If the breath test is unavailable or if the person is physically unable to take the breath test, only then may a blood test be given. *Id.*

The Virginia Court of Appeals has upheld the constitutionality of this chemical testing sequence. *Chase,* 555 S.E.2d at 423. In *Chase,* the defendant's breath test revealed a blood alcohol level of 0.10. *Id.* After receiving his test result, Defendant requested that the Commonwealth provide a blood test, in the hopes that the blood

test would reveal a lower blood alcohol level. *Id.* The arresting officer refused to transport the defendant to the hospital for a blood test. *Id.* Rejecting defendant's due process violation arguments, the court determined that the Section 18.2–268.2 did not infringe on the defendant's ability to obtain his own independent blood test. *Id.* at 424–25. In so holding, the Court affirmed the application of this statute, and the mandated testing sequence in Section 18.2–268.2. *Id.* at 424.

Irrespective of the propriety of the preceding articles, "a" or "the" to the phrase, "chemical test as provided in Article 2," the General Assembly has authorized two valid methods of testing an individual's blood alcohol level, the breath test and the blood test. By its very structure, the Virginia legislative scheme clearly prioritizes the chemical breath test over the blood test. Any holding that Section 18.2–270 does not apply when a defendant submits to a breath test would undermine Section 18.2–270, Article 2 generally, and the Commonwealth's DWI policies.

In sum, the purpose of Section 18.2–270 is to punish severely those DWI defendants who drive with high levels of alcohol in their system. These defendants are dangerous to society because they recklessly disregard the safety, property, and welfare of others. The Virginia General Assembly, in amending Section 18.2–270 to add mandatory minimum periods of incarceration, clearly seeks to deter and punish these dangerous offenders severely.

■ Construing Section 18.2–270 in harmony with Article 2, this Court holds that, upon a conviction under Section 18.2–266 where proof of the defendant's blood alcohol level is by a valid chemical breath or blood test as provided in Article 2, Section 18.2–270 applies. To hold otherwise would defeat the purpose of Section 18.2–270.

### IV. *Conclusion*

On the Defendant's plea of guilty to DWI (P2022554) in violation of 32 C.F.R. Section 234.17(c)(1)(ii), the Government's Motion to Dismiss Defendant's DUI (P2022553) in violation of 32 C.F.R. Section 234.17(c)(1)(i) and reckless driving (P2022555) in violation of 32 C .F.R. Section 234.17(a) (adopting Va.Code Ann. Section 46.2–864), and the stipulation of facts entered in open court, the Court had previously found Defendant **GUILTY OF** DWI (P2022554) in violation of 32 C.F.R. Section 234.17(c)(1)(ii) on November 19, 2004.

By way of sentencing, on the parties' proposed amended stipulation of facts, Defendant's December 2, 2004 Brief, Defendant's December 7, 2004 Supplemental Brief, and the Government's December 14, 2004 written Opposition thereto, this Court **FINDS** that there is a factual basis to support a finding that Defendant's blood alcohol level was greater than 0.15, but less than 0.20.

As a matter of comity, this Court applies, in its discretion, the enhanced penalties in Section 18.2–270(A) where a defendant's blood alcohol level is 0.15 or greater. Evidence of a defendant's blood alcohol level under Section 18.2–270 may be based on either a chemical blood test or a chemical breath test. Because Defendant Barber's blood alcohol level was greater than 0.15, but less than 0.20, this Court, per the policy and comity reasons set forth herein, will sentence Defendant in accordance with the enhanced penalties in Section 18.2–270(A).

Counsel are **DIRECTED** to confer on the scheduling of a mutually agreeable date for Defendant's Sentencing and to advise Chambers expeditiously.